■ In the Matter of TERRY P. KALER, Petitioner, v THOMAS P. DiNAPOLI, as Comptroller of the State of New York, et al., Respondents. [928 NYS2d 785]—

Stein, J.

Petitioner, a correction officer, applied for performance of duty disability retirement benefits based upon injuries sustained after he slipped on a floor that had recently been mopped by an inmate. After the application was initially denied, petitioner requested a hearing and a redetermination. Following a hearing, the Hearing Officer found that petitioner's fall was caused by an act of an inmate (see Retirement and Social Security Law § 507-b [a]) and remanded his application to respondent New York State and Local Retirement System to resolve other necessary issues. On review, respondent Comptroller reversed the Hearing Officer's determination and denied petitioner's application, prompting this CPLR article 78 proceeding.

We confirm. Petitioner bore the burden of establishing that he is incapacitated from performing his work-related duties "as the natural and proximate result of an injury, sustained in the performance . . . of his or her duties by, or as a natural and proximate result of, an act of any inmate" (Retirement and Social Security Law § 507-b [a]). Here, petitioner testified that, while walking in the correctional facility's mess hall in the course of his duties, he turned a corner and slipped on a floor that was still wet after having been mopped by an inmate. The issue before us distills to whether the routine mopping of a floor constitutes an act of an inmate for purposes of the statute.

The phrase "act of any inmate" is not defined in Retirement and Social Security Law § 507-b. It is fundamental that, in interpreting the statute, we must " 'ascertain and give effect to the intention of the Legislature' " (Roberts v Tishman Speyer Props., L.P., 62 AD3d 71, 81 [2009], affd 13 NY3d 270 [2009], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]). The legislative justification for the enact-

ment of Retirement and Social Security Law § 507-b was that the increased inmate population of the state's prison system created strain and tension, manifesting itself in an increase in altercations among inmates and between inmates and correction officers (*see* Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2655-2656). These conditions resulted in injuries to correction officers who, in many cases, were forced to retire because their injuries prevented them from performing the duties of their job (*see* Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2655-2656). Thus, the statute was clearly intended to compensate correction officers who, because of the risks created by their "daily contact with certain persons who are dangerous [and] profoundly anti-social" (Governor's Mem approving L 1996, ch 722, 1996 McKinney's Session Laws of NY, at 1943), become permanently disabled "as a natural and proximate result of[ ] an act of any inmate" (Retirement and Social Security Law § 507-b [a]). Notably, the decisions issued by the Comptroller interpreting this statute have not been the model of consistency.* However, petitioner's reliance on this inconsistency is misplaced. In our view, the Comptroller's determination in *Matter of Joseph Kozak* (New York State & Local Retirement Sys., Registration No. 3339284-6, Hearing Case No. 03-0371 [June 4, 2004]) is questionable. However, that case has never been reviewed by this Court and is not now before us. In any event, mopping a floor—a benign chore routinely performed in penal institutions by inmates—is clearly not, in and of itself, the type of activity that was intended to trigger the extra protections afforded correction officers by this statute. Accordingly, the determination is confirmed.

Mercure, J.P., Peters, Malone Jr. and Kavanagh, JJ., concur. Adjudged the determination is confirmed, without costs, and petition dismissed.

---

\* As relevant here, in an interoffice memorandum describing the Retirement System's guidelines for determining what qualifies as an "act of an inmate" and a subsequent addendum thereto, respondents attempt to draw a distinction between the situation where a correction officer slips on a floor that was wet from just having been mopped by an inmate—indicating that this would not qualify the correction officer for benefits—and one where there was a puddle or some unforeseen spill caused by the inmate who had been mopping—which would so qualify the correction officer (*see e.g. Matter of Joseph Kozak* [New York State & Local Retirement Sys., Registration No. 3339284-6, Hearing Case No. 03-0371 (June 4, 2004)]).